UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | NOT PRESENT | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| NOT PRESENT | NOT PRESENT |

**Proceedings:** **(IN CHAMBERS):  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** (filed 04/12/10)

## I.    INTRODUCTION

On November 4, 2008, plaintiff Steven Shein filed the instant class action case against defendant Canon U.S.A., Inc. ("Canon").  On January 2, 2009, plaintiff Shein, joined by plaintiff Jason Insalasco, filed a first amended complaint ("FAC"). The parties subsequently met and conferred, and defendant informed plaintiffs that it intended to file a motion to dismiss the complaint.  Thereafter, plaintiffs agreed to file a second amended complaint ("SAC").

Plaintiffs filed the SAC on April 28, 2009, alleging six claims: (1) breach of express warranty; (2) unjust enrichment; (3) violation of the California Consumers Legal Remedies Act, Cal. Civil Code § 1750 et seq. ("CLRA"); (4) violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. ("FAL"); (5) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"); and (6) conversion.  On May 27, 2009, Canon filed a motion to dismiss plaintiffs' SAC.  On June 22, 2009, the Court granted in part and denied in part defendant's motion to dismiss.[1]

Plaintiffs filed a third amended complaint ("TAC") on July 10, 2009 alleging three

---

[1]  The Court denied defendant's motion to dismiss plaintiffs' claims for violation of the UCL and conversion.  The Court granted defendant's motion to dismiss without prejudice plaintiffs' claims for breach of express warranty, violation of the CLRA, and violation of the FAL.  The Court granted defendant's motion to dismiss plaintiff's unjust enrichment claim with prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

claims: (1) violation of CLRA; (2) violation of UCL; and (3) conversion. On September 22, 2009, the Court denied defendant's motion to dismiss plaintiff's CLRA claim.

On April 12, 2010, plaintiff Insalasco filed the instant motion for class certification.[2] Canon filed its opposition on June 7, 2010. On July 2, 2010, plaintiff filed his reply. A hearing was held on July 22, 2010. Then, the Court took the matter under submission.[3] At the hearing, the Court tentatively indicated that it would grant certification as to plaintiff's UCL claim and deny certification as to plaintiff's CLRA claim. Upon further review of the record and the positions advanced at oral argument, the Court concludes, for the reasons discussed herein, that plaintiff's motion for class certification should be denied without prejudice.

## II.    BACKGROUND

By this motion, plaintiff seeks certification of the following class, with regard to his claims for violation of CLRA and for violation of UCL: "All residents of the State of California who purchased a Canon Pixma series inkjet printer on or after November 4, 2004." Mot. at 2. The gravamen of plaintiff's suit is that these Canon-brand Pixma series inkjet printers uniformly misinform users that "ink has run out" and that they must replace the purportedly empty ink cartridge, when in fact, at the time Canon issues its "ink out" messages, these ink cartridges still contain a significant amount of useable ink.[4] TAC ¶¶ 1-3; Mot. at 1. According to plaintiff, Canon earns a substantial profit from the sale of each cartridge, and thus, employs these deceptive messages in order to increase the sale of replacement ink cartridges. Id.

---

[2] Upon stipulation of the parties, the Court dismissed plaintiff Shein without prejudice from the instant action on March 24, 2010.

[3] On July 26, 2010, the Court denied Canon's ex parte application for leave to submit a post-hearing memorandum of points and authorities addressing issues raised at the July 22, 2010 hearing.

[4] An inkjet printer is any printer that places small droplets of ink onto paper to create an image. The ink used by inkjet printers is stored in and dispensed from one or more inkjet cartridges. An inkjet cartridge dispenses one or more types of ink until it is empty, at which point the cartridge must be replaced.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                          ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

Plaintiff Insalaco, a resident of Los Angeles County, is an owner of a Canon Pixma MP830—a color inkjet printer marketed and sold by defendant Canon.[5]  Plaintiff declares that since purchasing this printer in August 2007, he has replaced the ink cartridges in his printer numerous times and that he replaced the ink cartridges whenever his printer indicated that a particular cartridge had "run out" of ink.  Mot. at 3; Ex. 2 (Insalaco Supp. Resp., 4:26-27).  According to plaintiff, his Canon Pixma MP830 printer indicated that an ink cartridge was "out of ink" in three ways.  Mot. at 3; Ex. 3 (Insalaco Dep. 62:1-63:12). First, the printer would either stop the print job—if it was in the middle of one—or refuse to start a new print job.  Second, the printer would display a message on its built in LCD screen stating that "Ink has run out. Replace the ink tank and close the cover."  Id. 62:2-5. Third, the printer would pop-up a dialog box on plaintiff's computer that indicated which ink cartridge "has run out;" instructed plaintiff to replace the ink tank and that "[t]he printer may be damaged if printing is continued under the ink out condition."  Id. 62:7-63:2.  Plaintiff testified that when he received the above messages, he did exactly as instructed and replaced the ink, in part because the "screen prompt on [his] computer said 'continuing to print could cause damage to the printer.'"  Id. 72:14-73:5.  However, despite Canon's statements to the contrary, plaintiff asserts that the ink cartridges that he was replacing were actually not empty and in fact had significant amount of useable ink remaining in them.[6]  Mot. at 6.  Thus, plaintiff asserts that by relying on Canon's statements, he discarded perfectly useable, and expensive, ink.

According to plaintiff, the automated representations that Canon makes for all the printers at issue are substantially the same, in that the printer conveys the identical message that plaintiff received—an ink cartridge is out of ink and must be immediately

---

[5]  The Canon Pixma series inkjet printers, at issue, were developed and designed by Canon's parent company, Canon Inc. of Tokyo, Japan ("CINC").  Opp'n at 3; Declaration of Hajime Yamamoto ¶ 6.

[6]  In support of this contention, plaintiff cites to an article published by PCWorld on November 2, 2008, and entitled "How Much Ink is Left in that Dead Cartridge?"  Mot. at 6; Torrijos Decl. Ex 4.  According to tests run by PCWorld for this article, the Canon Pixma MP610 printer, a printer included within the class plaintiff is presently seeking to certify, would stop printing when approximately 24 percent of the total ink remained in the cartridge.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA        O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

replaced.  Mot. at 6; Ex. 5 (chart with a summary of the messages displayed on the control panel of the Canon Pixma series printer models at issue).  Further, he asserts that these statements are misrepresentations, since ink actually remains in the cartridge and the user could in fact continue to use the cartridge until it was actually out of ink.  Thus, plaintiff argues that every class member received the same messages as plaintiff did and was harmed in the same way that plaintiff was.  Mot. at 6.

Canon disputes plaintiff's assertion that the ink level status messages that the class members receive are "substantially the same."  Opp'n at 1.  Further, it emphasizes that the proposed class includes 173 different printer models encompassing numerous types, combinations and permutations of ink cartridges and ink level status detection methods, all of which it argues affect the amount of cartridge ink remaining when an ink level status message is displayed.  Id. at 2-10; Yamamoto Declaration.[7]  Specifically, Canon asserts that while all of the printer models at issue let the user know the ink level status, they differ significantly from one another respecting the number, wording, display, and timing of these messages.[8]  Opp'n at 2-4; Yamamoto Decl. ¶ 32.  Moreover, it asserts that

---

[7] In support its assertion that the printers encompassed by the proposed class differ in many significant ways, Canon submits the declaration of Hajime Yamamoto, the General Manager in the Inkjet Market Strategy Planning Division of the Inkjet Products Operation Administration Center of CINC, defendant's parent corporation.  On July 15, 2010, plaintiff filed an objection and motion to strike Yamamoto's declaration on the basis that his report does not meet the Daubert standards and that his testimony is not relevant to the instant motion.  Plaintiff argues that the evidence presented lacks any factual basis, principles, data, methods, surveys, or application to support Yamamoto's analysis of Canon printer customers' reactions to the "ink out" messages.  Given that the Court does not rely on the Yamamoto's declaration with regard to printer usage to decide the instant motion, the Court overrules the objection as moot.

[8] For example, Canon asserts that while some printer models advise the user that "the printer may be damaged if printing is continued under the ink out condition," messages on other models do not mention that concept at all but, instead advise the user that "[t]he resulting print quality is not satisfactory, if printing is continued under the ink out condition."  Yamamoto Decl. ¶ 32(a).  Further, it asserts that although the display of some ink level status messages do not affect a printer's ability to continue printing, the display of other messages temporarily prevents further printing until the user presses

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

printer users who see an "ink out" messages will typically also see an accompanying graphic depicting some amount of remaining ink, and that the graphic never shows an empty ink cartridge.  Yamamoto Decl. ¶ 32(a); Ex. A.4.  In addition, Canon asserts that a user receives a different message depending on whether the printer is connected to a computer running on Windows OS, which can display eight different types of ink level status messages, or Mac OS, which only displays five types of ink level status messages.[9] Id. ¶ 34.  Canon also emphasizes that the amount of cartridge ink remaining when ink level status messages are displayed depends on a number of factors, including the type of ink level detection method used by the printer and individual user practices.[10]  Opp'n at 9.

According to Canon, these ink level status messages could likely have affected only a small percentage of printer users in a way that could conceivably relate to the injury alleged in the instant case.  Opp'n at 6 (citing Expert Report prepared by Yoram "Jerry" Wind (the "Wind Report") ¶ 13).[11]  In the Wind Report, Canon's expert concludes, in part, that some users, perceiving the messages simply as bothersome "pop-

_____

"OK," "RESUME," or a similar key.  Id. ¶ 37.

[9] Further, Canon asserts that unlike Window OS users, Mac OS users must install and run a special printer utility program to view a graphic display corresponding generally to the current remaining ink in the cartridge.  Yamamoto Decl. ¶ 35.

[10] According to Canon, the type of ink level detection method used in a particular printer model depends on the cartridge platform used by that model, i.e., full-sponge, full-liquid, or half-liquid.  Id.  While all the printer models at issue use a "dot counting" method of ink level detection, only those printers compatible with half-liquid cartridges employ an additional ink level detection method known as "optical sensing," which Canon asserts is more accurate in determining remaining ink levels.  Yamamoto Decl. ¶¶ 16, 20.

[11] On July 15, 2010, plaintiff filed objections to and a motion to strike the Wind Report on the basis that it does not meet the Daubert requirements and the evidence presented therein is not relevant to a Rule 23 analysis.  In so far as the Court does not rely on the testimony provided in the Wind Report to rule on the instant motion, the Court overrules the objections as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

ups" just click "RESUME" and do not really "see" the messages at all.  Id. ¶¶ 8-9.  Other users, Wind asserts, may see the messages but consciously override them so that they can continue to print until print quality becomes unacceptable.  Id. ¶¶ 10-13.  Still other users, he asserts, never replace ink cartridges at all, but instead re-fill them with non-Canon brand ink purchased from third party vendors.  Id. ¶ 7.  Further, Canon maintains that depending on the printer model, users can actually see the amount of cartridge ink remaining when an ink level status message is displayed.[12]  Opp'n at 7; Yamamoto Decl. ¶¶ 9-11.  Thus, Canon asserts that printer users react very differently upon viewing a particular ink level status message depending on their model of printer, their own printing needs, and other factors unique to them—such as, their willingness to examine the wholly or partially transparent cartridge; business or consumer use; type and volume of print job at issue when the message appears; and number of previously printed pages.  Opp'n at 8; Yamamoto Decl. ¶¶ 70-79; Wind Report ¶¶ 6-7, 9-10, 15, 19.

## III.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis."  Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)).  Federal Rule of Civil Procedure 23 governs class actions.  A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4)

---

[12] According to Canon, users of printers with so called "half-liquid" and "full-liquid" cartridges are actually able to clearly observe the level of ink remaining in the transparent liquid chamber and the entire cartridge, respectively.  Yamamoto Decl. ¶¶ 9-11.  By contrast, users of full-sponge cartridges, however cannot observe remaining ink levels.  Id.  It asserts, moreover, that later generations of printers using half-liquid cartridges include an LED display that flashes slowly or rapidly depending on the ink level.  Id. ¶ 39.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

adequacy of representation. <u>Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.)</u>, 213 F.3d 454, 462 (9th Cir. 2000) (internal quotations omitted). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." <u>Falcon</u>, 457 U.S. at 155 (quoting <u>Califano v. Yamasaki</u>, 442, U.S. 682, 701 (1979)).

If the district court finds that the action meets the prerequisites of Rule 23(a), the court must then consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3). A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members," and where "a class action is *superior* to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. <u>Id.</u> "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1189 (9th Cir. 2001) *(*citing <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. <u>Id.</u> at 1190-1993. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." <u>Id.</u> (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1778 at 535-39 (2d. ed. 1986) (hereinafter "Wright, Miller & Kane")).

**IV. DISCUSSION**

**A.    <u>Rule 23(a) Requirements</u>**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

### 1.   Numerosity

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all of the class members would be impracticable.  Fed. R. Civ. P. 23(a).  However, "[i]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class."  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964) (quoting Advertising Specialty Nat. Ass'n v. FTC, 238 F.2d 108, 119 (1st Cir. 1956)).

Although plaintiff does not provide an estimated number of members of the class, he argues that numerosity is presumed where the class is compromised of 40 or more members.  Mot. at 10 (citing, e.g., In re Cooper Companies Inc. Securities Litigation, 254 F.R.D. 628, 634 (C.D. Cal. 2009)).  Canon does not dispute that plaintiff's proposed class is sufficiently numerous to satisfy Rule 23(a)(1).  Joinder is impracticable.  As such, there is no dispute that the numerosity requirement of Rule 23(a)(1) is therefore met.

### 2.   Commonality

Commonality requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is generally construed liberally; the existence of only a few common legal and factual issues may satisfy the requirement.  Jordan v. County of L.A., 669 F.2d 1311, 1320 (9th Cir. 1982).  The Court finds that the class members' claims derive from a common core of factual and legal issues.  These factual and legal issues include the question of whether the "ink out" messages issued by Canon Pixma series inkjet printers are likely to deceive a reasonable consumer.  Canon does not dispute that there exist questions of law or fact common to the class.  See Jordan, 669 F.2d at 1320.  The court agrees that the commonality requirement of Rule 23(a)(3) is therefore met.

### 3.   Typicality

Typicality requires a determination of whether the named plaintiff's claims are typical of those of the proposed class that they seek to represent.  Fed. R. Civ. P. 23(a)(3).  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020; Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985) ("A plaintiff's claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

meets this requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory").

Plaintiff argues that his claims and the putative class members' claims all arise from the same conduct—Canon's premature "ink out" messages. Mot. at 11. As victims of a common course of conduct, he contends that plaintiff's and class members' claims are identical, and thus he argues that the typicality requirement is satisfied. Id. at 12.

Canon responds that plaintiff cannot satisfy the typicality requirement because he uses only one model, the Canon Pixma MP830, which, according to Canon, is not typical of the other printer models at issue. Opp'n at 10-13; 24. Canon emphasizes that plaintiff's printer is unique in that it incorporates a later generation model feature—namely, a half-liquid cartridge with a functional memory chip that is able to detect ink level status more accurately—yet, the printer model retains the earlier generation model "ink has run out" initial message design, which affects less than 10% of the printer models at issue. Id. at 24; Yamamoto Decl. ¶¶ 63-64, 66-67. By contrast, it asserts, other models display multiple "ink out" messages, the earliest of which indicates that the printer "may have" run out of ink, and the later "ink has run out" message which is generally never seen because deteriorating print quality has already necessitated cartridge replacement. Opp'n at 11. Further, Canon argues that plaintiff's admittedly infrequent use affects when ink level status messages appear and because plaintiff's printer is connected to a computer running on Mac OS, when he receives an ink level status message, he can only view a graphic display corresponding generally to the current remaining ink level in the cartridge by running a special printer utility program for each print job. Id. at 11-12; 25 (citing Insalaco Dep. 46:16-47:1). Finally, Canon argues that plaintiff reaction to "ink out" messages is different from that of other printer users who generally ignore the messages and continue to print. Id. In this way, it emphasizes that although page yield information on his MP830 printer is available on Canon's website, plaintiff did not visit that website, nor did he try to locate any other source of information that would allow him to estimate, based on his particular printing needs and practices, how many pages he could reasonably be expected to print from each cartridge he purchased. Id. In addition, plaintiff testifies that he never opens the printer cover to check the ink level visually but relies exclusively on the ink level status messages displayed on his computer and LCD screen. Id. at 12 (citing Insalaco Dep. 52:1-4, 54:18-21, 57:12-24, 63:7-12, 69:18-70:21). All of these differences, Canon contends, set plaintiff apart from the members of the proposed class—including other MP830

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

users—and make him "subject to unique defenses which could skew the focus of the litigation." Id. at 25 (quoting Gonzalez v. Proctor & Gamble Co., 247 F.R.D. 616, 622 (S.D. Cal. 2007)).

Plaintiff replies that these purported differences raised by Canon have no bearing on whether his claims are typical, for purposes of this motion. Reply at 14. Rather, plaintiff reiterates that he is typical because he, like all members of the class: (a) owns a Canon printer that stops printing and displays an "ink out" message; and (b) was never advised that useable amounts of ink remained in the cartridges when the "ink out" message was displayed. Id.

Notwithstanding the asserted differences between plaintiff and members of the proposed class, plaintiff's claims are based on an alleged common course of conduct by Canon whereby defendant's Pixma inkjet printers prematurely indicate that an ink cartridge is out of ink and needs to be replaced. Therefore, plaintiff's claims arise from the "same event or course of conduct" as those of the various class members, as required under Rule 23(a)(3), and are typical of the claims of the proposed class.

### 4.     Adequacy of Representation

The adequacy of representation requirement of Rule 23(a)(4) involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

As the owner of a Canon Pixma printer, plaintiff asserts that he has standing to pursue his UCL claim on behalf of the class because has suffered an actual injury and lost money or property when he replaced the purportedly empty ink cartridges in his printer directly as a result of the allegedly false and deceptive "ink out" messages made by Canon. Mot. at 7 (citing Cal. Bus. & Prof. Code § 17204; O'Brien v. Camisasca Auto. Mfg., 161 Cal. App. 4th 388, 399 (2008)). Plaintiff further asserts that his interests are fully aligned with those of the class since they bring the same claims for similar remedies under the same legal theories. Id. at 12. He maintains that there are no actual or potential conflicts of interest between plaintiff and the class members, and further that plaintiff's counsel are experience class action counsel that "remain[] committed to devoting all necessary resources to prosecuting this matter and possess the resources necessary to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|----------|---------------------|------|-----------------|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

represent the proposed class." <u>Id.</u> at 12-13. Canon does not appear to dispute that plaintiff's counsel are able to prosecute this action vigorously or contend that there are any conflicts of interest that would defeat certification. Accordingly, the Court finds that the adequacy requirement of Rule 23(a)(4) is satisfied.

## B.    Rule 23(b)(3) Requirements

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." <u>Hanlon</u>, 150 F.3d at 1022 (internal quotations omitted). As noted above, Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The latter requirement requires consideration of the difficulties likely to be encountered in the management of this litigation as a class action, including, especially, whether and how the case may be tried. In making these determinations, the Court does not decide the merits of any claims or defenses, or whether the plaintiffs are likely to prevail on their claims. Rather, the Court must determine whether plaintiffs have shown that there are plausible class-wide methods of proof available to prove their claims. Nevertheless, as the Ninth Circuit recently made clear in <u>Dukes v. Wal-Mart Stores, Inc.</u>, when considering a class certification motion, district courts "must[] perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims." 603 F.3d 571, 594 (9th Cir. 2010).

### 1.     Predominance and Commonality

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." <u>See</u> <u>Valentino</u>, 97 F.3d at 1234. Thus, the Court must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A Wright, Miller, & Kane, <u>Federal Practice & Procedure</u> § 1778 (3d ed. 2005). For the proponent to satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

exist, as it is under Rule 23(a)(2)'s commonality requirement— the predominance inquiry under Rule 23(b) is more rigorous.  Amchem Prods., Inc., 521 U.S. at 624.  The predominance question "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Id. at 623.  The Court, therefore, must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members.  Abed v. A. H. Robins Co. (In re Northern District of California, Dalkon Shield IUD Products Liability Litigation), 693 F.2d 847, 856 (9th Cir. 1982).

Here, as discussed below, the crucial questions are (1) whether plaintiff has shown that every printer model in the proposed class displays the same, or substantially the same, "ink out" message; and (2) the existence of a plausible class-wide method for proving that when these "ink out" messages appear there is in fact a material amount of usable ink remaining in each class members' printer cartridges, and not only a *de minimis* amount.  Accordingly, the question is whether plaintiff can establish on a class-wide basis the materiality of Canon's misrepresentations regarding the remaining ink level of the printers in question and that these allegedly deceptive statements caused injury to members of the class.[13]

Plaintiff maintains that every single one of the printer models in his proposed class: (i) stops printing when the printer determines that an ink cartridge has reached a predetermined "ink out" condition (the "hard stop");[14] (ii) displays an "ink out" message

---

[13]  Canon also contends that plaintiff's proposed class is "impermissibly vague and over broad," and thus plaintiff fails to satisfy an implied threshold requirement for class certification that the class be identifiable and ascertainable.  Opp'n at 21. The Court finds that plaintiff's proposed class definition is sufficient, given that the identity of class members is ascertainable by reference to an objective criteria—namely ownership of certain Canon brand printers.  See 5 James W. Moore, Moore's Federal Practice, § 23.21[1] (2001).

[14]  Plaintiff asserts that it is not clear based on the evidence obtained at present, whether some of the Canon Pixma series printers lack this "hard stop" feature that causes the printer to stop printing before the cartridge is empty.  Reply at 1, n.1.  To the extent that further discovery reveals the existence of such printers, plaintiff explicitly excludes them from his class definition.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                 ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

to users when the printer has reached the "ink out" condition;[15] and (iii) determines when an ink cartridge has reached the predetermined "ink out" condition by using the exact same "dot counting" technology.  Reply at 1 (citing Yamamoto Dep. 113:18-21, 116:21-118:2).  Moreover, plaintiff asserts that Canon fails to disclose to its users that the messages they were receiving were inaccurate.  Id. at 9.  According to plaintiff, Canon fails to disclose to its customers that in order to ensure that their ink cartridges do not actually run out of ink before the "ink out" message has been displayed, Canon "compensates" for the at least 10 % variance inherent in its dot counting technology.[16] Id. at 6 (citing Yamamoto Dep. 114:16-115:4).  Plaintiff maintains that the very existence of this "compensation" means every "ink out" message is demonstrably false

---

[15]  At oral argument, plaintiff's counsel emphasized that while the printers at issue may display varying messages, all the printers display the same ultimate "ink has run out" message.

[16]  The "dot counting" detection method is an algorithm programmed by Canon which Canon claims is accurate to approximately a 10 percent variance.  Yamamoto Dep. 104:19.  In his deposition, Canon's employee Yamamoto testified that "[u]nder the dot counting method, with respect to an ink cartridge of a certain color, the remaining volume is calculated by counting and adding—tabulating the number of dots that were used for printing and other from the recorder head.  So at least there is a 10 percent margin of error."  Id. at 104:15-19.  When asked how Canon "compensate[s] for that 10 percent margin of tolerance," or, in other words, if Canon "do[es] it by creating programming that gives an "out" message 10 percent earlier," Yamamoto testified that

> [t]here are many different printer models, so it varies by model.  But in order to give an early message by taking into account the 10 percent in the dot counting method or, in other words, when the method is shown the ink is exactly gone or there are models that have some small meaningful amount of ink in it.  That's what's done for compensation, to use your word.

Id. at 114:16-115:4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|----------|---------------------|------|------------------|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

when given.[17] Id.

Despite Canon's argument that different printer users receive a wide array of messages depending on their printer model and the operating system running on their computer, see opp'n at 2-5, 17-18, Yamamoto Decl., Ex. A, the Court is unpersuaded that these variations are the type of "material variation" in defendant's representations regarding the ink level that would render fraud-based claims unsuitable for class treatment. See In re First Alliance Mortgage Co., 471 F.3d 977, 990, 992 (9th Cir. 2006) ("The class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims."). Rather, it appears, that all of the printers plaintiff is seeking to certify issue a substantially similar "ink out" message, combined with the "hard stop" of the printer while receiving that message, and that class members allegedly receive this message before the printer cartridges may in fact be entirely empty.

As to the second question—namely, whether plaintiff has shown a plausible class-wide method for proving that these "ink out" messages appear when there is in fact a material amount of usable ink remaining in each class members' printer cartridges, and thus constitute actionable conduct common to the entire Class—the Court considers the two claims plaintiff is presently seeking to certify in turn.

**a.    Claim Under the UCL**

Plaintiff argues that common issues of law and fact predominate as to his claim under the "fraudulent" prong of the UCL. Mot. at 14. He emphasizes that "relief under the UCL is available without individualized proof of deception, reliance and injury"

---

[17] On July 14, 2010, Canon filed objections to plaintiff's characterization of the evidence regarding the role of margin of tolerance and commonality of ink level detection methods in printers. It argues that Yamamoto denied that all of the printers at issue are programmed to "compensate" for a ten percent margin of tolerance in determining when "ink out" messages are displayed. Further, it argues that Yamamoto explained that the impact of the dot counting method depends entirely on the cartridge platform used by that model of printer.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|----------|---------------------|------|-----------------|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

because to state a claim under the UCL, based on false advertising or promotional practices, "it is necessary only to show that members of the public are likely to be deceived." Id. (In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009)). This "reasonable consumer" test, plaintiff argues, is by its very nature objective and thus uniform and common to the entire class. Id. at 15 (citing, e.g., Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1093 (9th Cir. 2010)). Accordingly, plaintiff asserts that adjudication of this claim hinges on the determination of a single issue that is uniformly applicable to each class member—whether Canon's messages regarding ink cartridge levels are likely to deceive a reasonable consumer. Id. at 14.

Canon contends that individual issues of liability predominate over common issues. Opp'n at 14. Although the California Supreme Court has held that relief under UCL is available without individualized proof, Canon contends that holds true only where there has been "uniform conduct to mislead the entire class." Id. at 15 (quoting Kaldenback v. Mut. of Omaha Life Ins. Co., 178 Cal. App. 4th 830, 850 (2009)). Likewise, it asserts that reliance cannot be inferred unless the alleged misrepresentation was material. Id. (citing, e.g., Kingsbury v. U.S. Greenfiber, LLC, 2009 WL 2997389, at *10 (C.D. Cal. Sept. 14, 2009) ("Any inference of reliance that could be drawn from [defendant's] alleged misrepresentations are overcome by the overwhelming evidence that [plaintiff] did not rely on any of the statements at issue.")). In the instant case, Canon argues that causation, deception, reliance, and injury must be individually established because (1) plaintiff cannot allege uniform conduct, given that the users of the 173 printer models at issue received the ink level status messages at points when greatly varying amounts of ink may have remained; and (2) determining the amount of ink remaining and whether messages were material to users requires individualized inquiries into how each printer user reacted to the specific messages that were received, and how each printer in the putative class was used. Id. at 15-16, 18. Canon contends that this case is the same as Frosini v. Bridgestone Firestone N. Am. Tire, LLC, 2007 WL 2781656 (C.D. Cal. Aug, 24, 2007), where this Court found that plaintiff's failure to identify a "single practice, policy or defect affecting all . . . proposed class members in the same way" required denial of class certification. Id. at 16. It argues, by contrast, that this case is unlike Menagerie Prods. v. Citysearch, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009), where this Court easily found a single practice affect all proposed class members because defendant was alleged to have made a material omission to all putative class members who had entered into a standard form agreement with defendant. Opp'n at 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

Plaintiff replies that under the UCL, the individual reactions of each class member to the "ink out" message is irrelevant because the UCL employs an objective standard. Reply at 10.  He argues that this case is fully analogous to <u>Menagerie Products</u>, because plaintiff has offered sufficient evidence of a common class-wide omission in demonstrating that Canon fails to disclose to its consumers that there is in fact a significant quantity of ink remaining in an ink cartridge when the "ink out" messages are displayed. <u>Id.</u> at 11.  Finally, plaintiff contends that Canon's attempt to analogize various printer models to different tire modes, at issue in <u>Frosini</u>, is unavailing.  <u>Id.</u>  Whereas the record in <u>Frosini</u> demonstrated that the tires at issue may have been subjected to any number of conditions, including wear and tear, plaintiff argues that there is nothing in the record to demonstrate that the misrepresentations made by Canon depend on the particular manner or conditions under which an individual printer is used.  <u>Id.</u> at 12.

At oral argument, Canon emphasized that plaintiff fails to offer any admissible evidence, or expert testimony, to demonstrate how he will establish on a class-wide basis that a material amount of usable ink remains in each class members' printer cartridges at the time when the "ink out" message appears.  Without any such supporting evidence, or a trial plan for that matter, Canon argued that plaintiff fails to meet his burden under Rule 23(b)(3), to show how this case could proceed as a class action.  Further, it maintained, that without class-wide proof that the "ink out" message appears when a significant amount of usable ink remains in each class members' cartridges, plaintiff cannot show that the message is a material misrepresentation or omission that could constitute deceptive conduct under the UCL.   In response, plaintiff clarified that the key conduct common to the entire class is Canon's failure to disclose the at least ten percent variance inherent in its dot counting technology.  Thus, he argued that the deposition testimony provided by Canon's employee Yamamoto provides support evidentiary support for his motion.  In other words, according to plaintiff, given the margin of error inherent in the technology that Canon employs to determine ink levels, as conceded by Yamamoto, <u>see</u> Dep. 104:15-19, Canon must compensate for this "margin of error" by designing its printers to indicate that an ink cartridge is "out of ink" when its technology has estimated that the ink remaining in the cartridge is within its "margin of tolerance."  In this way, plaintiff argues that the amount of ink that remains in any individual class members' cartridge is irrelevant because the claim is that the message the "ink has run out" deceptively fails to disclose that its based on a margin of tolerance.

Although "relief under the UCL is available without individualized proof of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

deception, reliance, and injury," see Tobacco II Cases, 46 Cal. 4th at 312, 320, in this case, plaintiff fails to demonstrate how he will establish on a class-wide basis that a material amount of ink remained in each class members' cartridges when the "ink out" messages appeared. If only a *de minimis* amount of ink remained at that point, then no misrepresentation or omission was made, and certainly not one that could be deemed material or "likely to deceive" a "reasonable consumer" under the UCL. Plaintiff's attempt to rely solely on the deposition testimony of Canon's employee Yamamoto is unavailing. First, the Court is unpersuaded that his testimony can be construed in the way advanced by plaintiff— namely, that Canon concedes that all of its printers are programmed to "compensate" for a 10% margin of tolerance in determining when an "ink out" messages are displayed. Further, the fact that there is a ten percent variance inherent in the printer technology does not address the critical question of whether there is in fact a material amount of useable ink remaining in each class members' printer cartridges when the "ink out" message appears. Because plaintiff fails to submit any evidence or expert testimony to the contrary, it appears based on the record that whether a printer receives an "ink out" message before, after, or at the same time that the ink in the cartridge has run out is an individual issue of fact that must be determined for each printer. Accordingly, the Court concludes, as to plaintiff's UCL claim, that common issues of fact do not predominate over individual ones.

**b.    Claim under the CLRA**

Plaintiff argues that common issues predominate as to his CLRA claim. Mot. at 15. He acknowledges that unlike a UCL class, the member of a CLRA class must show that he or she suffered damage by relying on the defendant's misrepresentation or omission.[18] Id. (citing Stern v. AT&T Mobility Corp., 2008 WL 4382796, at *12 (C.D.

---

[18] The CLRA makes it unlawful to use "unfair methods of competition or deceptive acts or practices" in the sale of goods or services to a consumer. Cal. Civ. Code § 1770(a). The CLRA allows "[a]ny consumer who suffers any damages as a result of the use or employment by any person of a method, act, or practice" to bring an action to recover or obtain actual damages, injunctive relief, restitution, and/or punitive damages. Cal. Civ. Code § 1780(a). Such unlawful conduct includes "representing that goods or services have . . . characteristics[,] . . . uses, benefits, or qualities which they do not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

Cal. Aug. 22, 2008); <u>Steroid Hormone Product Cases</u>, 181 Cal. App. 4th 145, 155 (2010)). Nevertheless, plaintiff maintains that "the causation required by the [CLRA] does not make [his] claims unsuitable for class treatment." <u>Id.</u> at 16 (quoting <u>Massachusetts Mutual Life Ins. Co. v. Superior Ct.</u>, 97 Cal. App. 4th 1282, 1292-93 (2002)). Plaintiff contends that as long as he can show that "material misrepresentations were made to the class members, at least an inference of reliance arises as to the entire class." <u>Id.</u> (quoting <u>Mass. Mut.</u>, 97 Cal. App. 4th at 1292-93). In other words, he asserts, plaintiffs pursuing claims under the CLRA can "satisfy their burden of showing causation as to each by showing materiality as to all." <u>Id.</u> Because materiality is determined from the perspective of the reasonable consumer, plaintiff contends that it is an issue necessarily decided on a class-wide basis. <u>Id.</u> at 17 (citing <u>Falk v. General Motors Corp.</u>, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007)). Thus, although there may be individual variations concerning the printer messages that class members received and how certain class members reacted to those messages, plaintiff argues that these facts do not undermine the conclusion that common issues predominate. <u>Id.</u> at 16. Rather, he asserts that adjudication of his CLRA claim hinges on the determination of a common question of fact— whether Canon's substantially identical warnings made to all class members regarding ink cartridge levels are material. Mot. at 17 (citing <u>Mass. Mut.</u>, 97 Cal. App. 4th at 1294 (the "ultimate question of whether [those warnings] are material [is] a common question of fact suitable for treatment in a class action")). Finally, plaintiff emphasizes that individual damage considerations alone do not defeat a finding of predominance. <u>Id.</u> at 17 (citing <u>Yokoyama</u>, 594 F.3d at 1094). Because common questions predominate regarding liability, he asserts that Canon cannot defeat class action treatment by arguing that each class member will suffer different injuries, since they may have purchased a different quality and varying colors of replacement ink cartridges. <u>Id.</u>

In responding that individual issues of liability under CLRA predominate, Canon makes many of the same arguments it raised as to plaintiff's claim under UCL. Opp'n at 14-21. Because the CLRA does not apply to persons who purchase a product for business use, <u>see</u> Cal. Civ. Code § 1761(d), Canon contends that the Court will need to resolve on an individual basis whether each proposed class member is using the printer for "personal, family, or household purposes." <u>Id.</u> at 21. Further, it argues that because

have," and representing that a part, replacement, or repair service is needed when it is not." <u>Id.</u> §§ 1770(a)(5) and (15).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

plaintiff has suggested no method to determine materiality, the question of whether a user considers the level of ink that remains when the ink level status messages display, to be material, is an individual issue of liability.  Id. at 19 (citing Hodes v. Van's Int'l Foods, 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009) (denying certification of a class of purchasers of frozen waffles because, "plaintiffs have not presented the Court with any indication of how to determine the amount of damages suffered by each class member")).

A member of a CLRA class must show that he or she suffered damage by relying on the defendant's misrepresentation or omission.  Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th  746, 755 (2003).  Where misrepresentations are sufficiently material, "an inference of reliance may arise as to the entire class."[19]  Id. at 814; see also Mass. Mut., 97 Cal. App. 4th at 1286 (stating that class wide inference of reliance may be based on a material misrepresentation in order to certify CLRA class); but see, Gonzalez v. Proctor and Gamble Co., 247 F.R.D. 616 (S.D. Cal. 2007) (denying class certification because although an inference of reliance is permitted when a "single, material misrepresentation was directly made to each class member," the "[p]laintiff's allegations that a class of consumers, who may have seen all, some, or none of the advertisements that form the basis of [p]laintiff's suit, does not allow an inference of common reliance or liability").  A misrepresentation is judged to be material "if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question,' and as such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" In re Tobacco II, 46 Cal. 4th at 327 (quoting Engalla v. Permanente Medical Group, Inc. 15 Cal.4th 951, 976-977 (1997)).  Further, a presumption of reliance is most appropriate in cases sounding in fraud where the plaintiffs "have primarily alleged omissions, even though the [p]laintiffs allege

---

[19]  "Causation as to each class member is commonly proved more likely than not by materiality.  That showing will undoubtedly be conclusive as to most of the class. The fact a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all." Mass. Mut., 97 Cal. App. 4th at 1292 (quoting Blackie v. Barrack 524 F.2d 891, 907, fn. 22. (9th Cir. 1975)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

a mix of misstatements and omissions."[20] <u>Cartwright v. Viking Industries, Inc.</u>, 2009 WL 2982887, at 12 (E.D. Cal. Sept. 14, 2009) (citing <u>Binder v. Gillespie</u>, 184 F.3d 1059, 1064 (9th Cir. 1999)).

In the instant case, the gravamen of plaintiff's allegations is that Canon's "ink out" statements and its concealment of the inaccuracy inherent in its ink level detection methods are material enough to compel a reasonable consumer to believe that the ink cartridge is empty and needs to be replaced. However, as noted previously, plaintiff fails to demonstrate how he will establish on a class-wide basis that a material amount of ink remained in each class members' cartridges when the "ink out" messages appeared. Without such a showing, plaintiff cannot establish that "material misrepresentations were made to the class members [such that] at least an inference of reliance arises as to the entire class." <u>Mass. Mut.</u>, 97 Cal. App. 4th at 1292-93. Thus, the Court concludes that plaintiff fails to satisfy the predominance requirement as to his CLRA claim.

### 2.    Superiority

Because plaintiff fails to make out a sufficient showing to satisfy Rule 23(b)(3)'s predominance requirement, the Court need not consider whether the superiority requirement is met.

## V.    CONCLUSION

---

[20] In <u>Mazza v. Am. Honda Motor Co.</u>, 254 F.R.D. 610, 625-26 (C.D. Cal. 2008), and <u>Chamberlan v. Ford Motor Corp.</u>, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004), California district courts held that a presumption of reliance was appropriate, and thus common issues of law and fact predominated, in claims brought pursuant to the CLRA for failure to disclose alleged design defects. <u>Cf. Gartin v. S & M Nutec LLC</u>, 245 F.R.D. 429, 437-30 (C.D. Cal. 2007)(holding the common issues did not predominate where the plaintiff's fraud and CLRA claims were based upon affirmative misrepresentations and a presumption of reliance did not apply). Further, the Ninth Circuit has stated that a presumption of reliance typically is only permitted in securities fraud cases, and only in cases based on omissions as opposed to affirmative misrepresentations. <u>See Poulos v. Caesars World, Inc.</u>, 379 F.3d 654, 666 (9th Cir. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7323 CAS (Ex) | Date | August 10, 2010 |
|---|---|---|---|
| Title | STEVEN SHEIN, ETC.; ET AL. v. CANON U.S.A., INC. | | |

In accordance with the foregoing, the Court DENIES plaintiff's motion for class certification without prejudice.


IT IS SO ORDERED.


|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |